UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEN OMAR OUTHOUMMOUNTRY,<br><br>Plaintiff,<br><br>v.<br><br>PASCUA, et al.,<br><br>Defendants. | No. 1:22-cv-00104-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' EXHAUSTION MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 48) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion motion for summary judgment, filed August 28, 2023.

**I.**

**BACKGROUND**

This action is proceeding against Defendants N. Pascua and M. Childress for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

Defendants filed an answer to the third amended complaint (operative complaint) on February 3, 2023. (ECF No. 40.)

On March 28, 2023, the Court issued the discovery and scheduling order. (ECF No. 46.)

As previously stated, on August 28, 2023, Defendants filed the instant motion for

1

summary judgment for failure to exhaust the administrative remedies. (ECF No. 48.) Plaintiff filed a timely opposition on October 16, 2023, and Defendants filed a reply on December 13, 2023. (ECF Nos. 52, 57.)

On March 1, 2024, the Court stayed all merits-based discovery and vacated the discovery and dispositive motions deadlines to be reset following resolution of the instant motion, if necessary. (ECF No. 59.)

## II.
## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

2

are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

The regulations governing the filing and resolution of inmate grievances provide that "[a] claimant has the ability to submit a written grievance… to dispute a policy, decision, action, condition or omission by the department or departmental staff." Cal. Code Regs. tit. 15, § 3481(a). To exhaust their administrative remedies, the regulations generally require inmates to first submit a grievance to the institution's Office of Grievances within thirty days and then appeal the institution's response to the Office of Appeals within thirty days. Id. at §§ 3482, 3485. A substantive decision by the Office of Appeals then exhausts the inmate's administrative remedies. Id. at §§ 3483(m), 3485.

A grievance does not exhaust administrative remedies until it is pursued through the final level of review, id. § 3486(m), unless the issue under appeal was fully resolved at a lower level of review, id. § 3483(m)(2). Institutional-level responses of "disapproved" and "rejected" are not considered fully resolved and must be appealed in order for administrative remedies to be deemed exhausted. Id. at §§ 3483(i)(1), (6); 3483(m).

### B. Allegations of Complaint

On January 24, 2019, Plaintiff was housed at North Kern State Prison in the mental health crisis bed unit under the medical care of a "Keyhea Order" which is court ordered administered medication.  Plaintiff began to experience an episode of his mental health disorder and began to physically choke himself and attempt to kill himself.  Defendant N. Pascua refused to contact mental health staff to inform them that Plaintiff was having a mental health episode.  Defendant M. Childress also failed to contact the mental health staff to inform them that Plaintiff was having a mental health episode.  Defendants took it upon themselves to force medicate Plaintiff even though they are not licensed to dispense medications or trained to deal with inmates who are

4

experiencing a psychiatric episode.

Defendants' actions resulted in Plaintiff's condition getting out of control causing him to strike one of the Defendants. Plaintiff was punished for his actions there were a result of him suffering a psychotic episode and committing a battery on Defendants.

**C.     Statement of Undisputed Facts[1]**

1.     Plaintiff filed the instant action on December 22, 2021, and his operative complaint on July 25, 2022. (ECF Nos. 1, 29.)

2.     Plaintiff alleges that on January 24, 2019, Defendants Pascua and Munoz-Childress failed to inform medical staff of Plaintiff's mental health episode and subsequently force medicated Plaintiff. (ECF No. 29.)

3.     At all times relevant to the allegations in the complaint, Plaintiff was incarcerated at North Kern State Prison. (ECF No. 29.)

4.     As Plaintiff admits in his operative complaint, the administrative grievance process was available to Plaintiff. (ECF No. 29.)

5.     Plaintiff utilized the grievance process to submit ten grievances between January 24, 2019, when the alleged incidents took place, and July 25, 2022, when Plaintiff filed the operative complaint. (Declaration of O. Magallanes (Magallanes Decl.) ¶¶ 11, 1 Exs. A, B.)

6.     Two of the grievances that Plaintiff submitted during the relevant time period reference January 24, 2019, Grievance Log Nos. 6258 and 279029. (Magallanes Decl., Exs. D, L.)

7.     Grievance Log No. 6258 was closed by the Office of Grievances on June 18, 2020, for being outside of the office's jurisdiction. (Magallanes Decl., Ex. D.)

8.     There is no record of Plaintiff appealing the rejection of Grievance Log No. 6258. (Declaration of H. Moseley (Moseley Decl.) ¶ 9, Exs. A, B.)

9.     Grievance Log No. 279029 was rejected by the Office of Grievances on July 22, 2022, for not being filed within the required timeframe. (Magallanes Decl., Ex. L.)

10.   There is no record of Plaintiff appealing the rejection of Grievance Log No.

---

[1] Hereinafter referred to as "UF."

5

279029.  (Moseley Decl. ¶ 9, Exs. A, B.)

**D.     Analysis of Defendants' Motion**

Defendants argue that Plaintiff submitted two grievances referencing events on January 24, 2019, but there is no record of Plaintiff appealing either grievance.

In opposition, Plaintiff argues that an unknown nurse authored and submitted a grievance on his behalf which was disposed of by prison staff.

1.     <u>Grievance Log Nos. 6258 and 279029</u>

It is undisputed that two of the grievances Plaintiff submitted during the relevant time period reference January 24, 2019, Grievance Log Nos. 6258 and 279029.  (UF 6.)

In Grievance Log No. 6258, dated June 1, 2020, Plaintiff requests a retrial of his court case stemming from the incident on January 24, 2019.  (Magallanes Decl. Ex. D.)  This grievance does not mention either Defendant by name or description, nor does it include allegations that on January 24, 2019, medical staff were not informed of his mental health status or that Plaintiff was force medicated.  (Id.)

In Grievance Log No. 279029, dated June 23, 2022, Plaintiff requests reconsideration of the Rules Violation Report (RVR) and criminal charges that Plaintiff was found guilty of as a result of his actions on January 24, 2019.  (Magallanes Decl. Ex. L.)  This grievances does not mention either Defendant by name or description, nor does it include allegations that on January 24, 2019, medical staff were not informed of his mental health status or that Plaintiff was force medicated.  (Id.)

As neither of these grievances referenced Defendants by name or description, or that mental staff were not contacted about Plaintiff's mental health episode or that Plaintiff was force medication, they did not exhaust the claims against these Defendants in this action.  Rather, these grievances addressed Plaintiff's discipline following the January 24, 2019 incident.  Moreover, it is undisputed that there is no record of Plaintiff appealing either of the aforementioned grievances.  (UF 8, 10.)  Thus, even if these grievances sufficed to put CDCR on notice of Plaintiff's claims, he still failed to exhaust his administrative remedies because neither grievance was pursued to the end of appeal process.

1       Based on this evidence, Defendants have meet their initial burden of demonstrating that

2 Plaintiff failed to exhaust the administrative remedies. Albino, 747 F.3d at 1166. The burden

3 now shifts to Plaintiff "to come forward with evidence showing that there is something in his

4 particular case that made the existing and generally available administrative remedies effectively

5 unavailable to him." Id.

6       In opposition, Plaintiff argues that a "registered nurse aided [him] in drafting a cdcr

7 grievance on the action in the complaint, specifically naming both named defendants. The nurse

8 took the grievance, placed it in the mail." (ECF No. 52 at 2.) The nurse wrote "Inmate in Crisis

9 Bed unable to sign." (Id. at 3.) "The nurse took the completed grievance, she placed it in the

10 secured grievance mail box, and at that time plaintiff reasonably believed that his grievance had

11 been filed." (Id.) Plaintiff goes on to specify "a registered nurse blonde hair, 5'5-blue eyes, hair

12 down to shoulder length, second watch 5 day a week worker, stood at plaintiff's crisis bed door,

13 and she dictated on a cdcr grievance form the details plaintiff addressed concerning the incident

14 in the complaint and both defendants were named as the actors under color of state law whom

15 [sic] violated plaintiff's Constitutional Rights." (Id. at 4-5.)

16       In response, Defendants argue "Plaintiff's exhaustion claims are wholly unsupported by

17 any evidence, and evidence proffered by the Defendants roundly disproves Plaintiff's unfounded

18 assertions." (ECF No. 57 at 2.) Defendants submit that the "MHCB unit is one of two units

19 located within the Correctional Treatment Center (CTC), the other being for strictly medical

20 patients. (Declaration of Kathy Salazar (Salazar Decl.) ¶ 3; Declaration of Craig Riley (Riley

21 Decl.) ¶ 3; Declaration of Francisca Aligwekwe "Aligwekwe Decl.) ¶ 4; Declaration of Rahul

22 Swami "Swami Decl.) ¶ 3.) Nurses Navarrete and Swami were the two nurses to work directly

23 with inmate-patients in the MHCB. (Declaration of Patricia Kealy (Kealy Decl.) Ex A at 1;

24 Salazar Decl. ¶ 8; Riley Decl. ¶ 8; Aligwekwe Decl. ¶ 5; Swami Decl. ¶ 3; Declaration of Arceli

25 Navarrete (Navarrete) ¶ 3.) Neither of these nurses remembers writing the alleged grievance for

26 Plaintiff on January 25, 2019, or any other date. (Navarrete Decl. ¶ 4; Swami Decl. ¶ 4.) Nurse

27 Aligwekwe, the only other registered nurse who worked second watch in the CTC on January 25,

28 2019, declares that she was not assigned to work with mental health patients and did not author a

grievance for Plaintiff on any date or interact with Plaintiff at all on January 25, 2019. (Aligwekwe Decl. ¶¶ 5-7.)

Nurses Navarrete and Swami, as well as their shift supervisors, Riley and Salazar state that protocol dictates they document every encounter with inmate-patients in a progress note to be placed in the patient's medical file. (Salazar Decl. ¶ 5; Navarrete Decl. ¶ 5; Riley Decl. ¶ 5; Swami Decl. ¶ 5.) This protocol would apply to an instance where the inmate-patient asked for assistance with a grievance, authoring a grievance, or submitting a grievance on their behalf. (Salazar Decl. ¶ 5; Navarrete Decl. ¶ 5; Riley Decl. ¶ 5; Swami Decl. ¶ 5.) Both Navarrete and Swami reviewed Plaintiff's medical file and confirmed there was no progress note on January 25, 2019, or any other date, stating they assisted in authoring or submitting an institutional grievance on Plaintiff's behalf. (Navarrete Decl. ¶ 6; Swami Decl. ¶ 6.) Plaintiff's medical file included one progress note from January 25, 2019, which was not authored by either Navarrete or Swami and did not mention assisting Plaintiff within the filing of a grievance. (Kealy Decl. Exs. A, B.)

Plaintiff describes the unidentified registered nurse who assisted him with the grievance as having blonde hair, blue yes, and 5'5" in height. (ECF No. 52 at 5.) Nurses Aligwekwe, Navarrete, and Swami deny that the above description represents their appearances on January 25, 2019, or any other date. (Aligwekwe Decl. ¶¶ 8-9; Navarrete Decl. ¶¶ 7-8; Swami Decl. ¶¶ 7-8.) Supervising nurses Riley and Salazar also confirm that none of the registered nurses working second watch in Plaintiff's unit match the above description. (Salazar Decl. ¶¶ 7-8; Riley Decl. ¶¶ 7-8.) Riley and Salazar also submit that psychiatric technician Cheek, who worked third watch on January 25, 2019, is the only staff member who relatively matches Plaintiff's description. (Salazar Decl. ¶ 9; Riley Decl. ¶ 9; Kealy Decl. Ex. A at 2.) However, Cheek declares that she did not author the alleged grievance for Plaintiff on January 25, 2019, or any other date. (Declaration of Kimberly Cheek (Cheek Decl.) ¶ 4.)

Defendants further argue that even if a grievance was authored and submitted on his behalf, Plaintiff should have known that the grievance was not processed and utilized the grievance system available to him. Defendants submit that Plaintiff's routine use of the grievance process during the relevant period indicates his familiarity with the grievance system and process,

and since he received several responses to other grievances "it would be reasonable for Plaintiff to assume that when he did not receive a written decision from the Office of Grievances within the expected time period, that the Office of Grievances did not receive the grievance." (ECF No. 57 at 5.) Nor did Plaintiff include his allegations against Defendants in the subsequent grievances filed thereafter.

While Defendants argue that Plaintiff's conclusory allegations regarding his attempt to exhaust the administrative remedies and the subsequent unavailability of administrative remedies fails to meet his burden on summary judgment, the Court finds otherwise. As previously stated, Plaintiff declares that on January 25, 2022, a registered nurse assisted him in drafting a grievance specifically naming both Defendants. (ECF No. 52 at 2, 4-5.) The nurse took the grievance and placed it in the mail." (Id. at 2.) Defendants submit their own declarations and declarations by medical staff at North Kern State Prison, in an attempt to negate Plaintiff's claim that he submitted a grievance on January 25, 2019, but never received a response. (ECF Nos. 57, Attach. 3-8.) More specifically, Defendants submit the declarations of all the registered nurses working second watch in Plaintiff's unit on January 25, 2019, who deny ever assisting Plaintiff with the alleged grievance and have no knowledge of a registered nurse matching the physical description provided by Plaintiff. (Id.)

A prison officials' failure to submit an inmate grievance for review, or failure to respond to a grievance, makes the administrative remedy effectively unavailable. It is well established that "[w]hen prison officials improperly fail to process a prisoner's grievance, .... [they] have 'thwart[ed] [the prisoner] from taking advantage of [the] grievance process,' making that process unavailable." Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017) (citations omitted); see also Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir. 2015) (an officer's refusal to file an appeal would render administrative remedies unavailable); Hoffman v. Preston, No. 1:16-cv-01617-LJO-SAB, 2018 WL 4635859, at *4 (E.D. Cal. 2018) ("[a] prisoner is deemed to have exhausted ... remedies once a prison official fails to properly process his grievance"). Hence, " 'an inmate can show that administrative remedies are ... unavailable if 1) prison officials have failed to timely respond to a grievance, 2) the inmate has received no notice of or justification for

the delay, and 3) the inmate has no other available avenues to seek administrative relief.' "
Thornton v. Grissom, No. 1:16-cv-00498-AWI-MJS, 2017 WL 5158624, at *4 (E.D. Cal. 2017) (citation omitted); see also Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005) (prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances") (internal quotation marks and citations omitted).

Defendants argue that based on Plaintiff's previous grievance filings, "it would be reasonable for Plaintiff to assume that when he did not receive a written decision from the Office of Grievances within the expected time period, that the Office of Grievances did not receive his grievance" or he "could have included his allegations against Defendants in [] subsequent grievances…." (ECF No. 57 at 5.) However, pursuant to the Ninth Circuit's ruling in Andres, Plaintiff need only show that prison officials improperly failed to process his grievance. Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."). Andres does not require an inmate to follow-up with prison officials after a grievance was improperly processed. While failing to take reasonable steps to follow-up on the grievance that he allegedly filed could weigh on Plaintiff's credibility, the Court may not make credibility determinations or weigh conflicting evidence when ruling on Defendant's motion for summary judgment. See also Gaines v. California Dep't of Corr., No. 1:15-cv-00587-LJO-SAB (PC), 2019 WL 4243230, at *14 (E.D. Cal. Sept. 6, 2019), report and recommendation adopted, 2020 WL 220994 (E.D. Cal. Jan. 15, 2020) ("While an inmate could file a request for the status of his grievance, see Cal. Code Regs. tit. 15, § 3086(a), and did not do so here, the Court finds this to be a relevant consideration that goes to credibility rather than to the exhaustion requirement.").

Further, while Plaintiff may have submitted other grievances to the final level of review, such evidence is not dispositive of whether he submitted a grievance in this instance and may tend to show that Plaintiff had a practice of correctly submitting appeals.

The competing nature of the declarations cannot be resolved by way of summary judgment because the Court cannot weigh the credibility of Plaintiff's declaration that he submitted a grievance on January 25, 2019, against Defendants' evidence that he did not submit a

10

grievance on January 25, 2019, and summary judgment is not appropriate on the issue of exhaustion. See Ransom v. Aguirre, No. 1:12-CV-01343 AWI DLB (PC), 2015 WL 5024867, at *7 (E.D. Cal. Aug. 25, 2015) (finding that summary judgment is not warranted where the evidence before the court consists of competing declarations, which raise an issue of witness credibility); cf. Hubbard v. Houghland, 471 F. App'x 625, 626 (9th Cir. 2012) (reversing dismissal based on failure to exhaust because the district court determined the credibility of Plaintiff's declaration without holding an evidentiary hearing).

When "material facts relevant to the issue of exhaustion are disputed, then 'summary judgment should be denied' and disputed factual questions relevant to exhaustion should be decided by the Court 'in a preliminary proceeding.' " Willard v. Sebok, No. CV 13-2251-MMM (RNB), 2015 WL 391673, at *3 (C.D. Cal. Jan. 28, 2015) (citing Albino, 747 F.3d at 1170-71); see also Jones v. Cal. Dep't of Corr., 2014 WL 3908184, at *1 (9th Cir. Aug. 12, 2014) ("district courts should hear oral testimony where [...] factual questions [are] not readily ascertainable from the declarations of witnesses or questions of credibility predominate ..."); Coleman v. Brown, 938 F. Supp. 2d 955, 961-62 (E.D. Cal. 2013) (resolving credibility determinations are normally accomplished through an evidentiary hearing).  In light of the parties' factual dispute, the Court will recommend that Defendants' motion for summary judgment be denied, and this matter be set for evidentiary hearing to determine whether Plaintiff exhausted administrative remedies relative to his claim in this action. Albino, 747 F.3d at 1168 ("If summary judgment is not appropriate, the district judge may decide disputed questions of fact in a preliminary proceeding.").

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be denied, and the matter be set for an evidentiary hearing to determine whether the action should be dismissed, without prejudice, for failure to exhaust the administrative remedies.

///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 25, 2024**

UNITED STATES MAGISTRATE JUDGE