UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEN OMAR OUTHOUMMOUNTRY,<br><br>Plaintiff,<br><br>v.<br><br>PASCUA, et al.,<br><br>Defendants. | No. 1:22-cv-00104-JLT-SAB (PC)<br><br>**SUPPLEMENTAL** FINDINGS AND RECOMMENDATIONS FOLLOWING EVIDENTIARY HEARING RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THE ACTION BE DISMISSED, WITHOUT PREJUDICE, FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br><br>(ECF No. 79) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

This action is proceeding against Defendants N. Pascua and M. Childress for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

Defendants filed an answer to the third amended complaint (operative complaint) on February 3, 2023. (ECF No. 40.)

On March 28, 2023, the Court issued the discovery and scheduling order. (ECF No. 46.)

As previously stated, on August 28, 2023, Defendants filed the instant motion for summary judgment for failure to exhaust the administrative remedies. (ECF No. 48.) Plaintiff

1

1  filed a timely opposition on October 16, 2023, and Defendants filed a reply on December 13,
2  2023.  (ECF Nos. 52, 57.)

3        On March 1, 2024, the Court stayed all merits-based discovery and vacated the discovery
4  and dispositive motions deadlines to be reset following resolution of the instant motion, if
5  necessary.  (ECF No. 59.)

6        On March 25, 2024, Findings and Recommendations were issued recommending that
7  Defendants' motion for summary judgment be denied and the matter be set for an evidentiary
8  hearing to determine whether the action should be dismissed, without prejudice, for failure to
9  exhaust the administrative remedies.  (ECF No. 61.)

10        On June 4, 2024, the Court declined to adopt the Findings and Recommendations at that
11  time, and referred the matter back to the magistrate judge to conduct an evidentiary hearing under
12  Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  (ECF No. 62.)  The ruling on Defendants'
13  motion for summary judgment was deferred until the completion of the evidentiary hearing and
14  issuance of supplementary or amended Findings and Recommendations.  (Id.)

15        On June 11, 2024, the matter was set for an evidentiary hearing on August 16, 2024,
16  which was subsequently continued to November 8, 2024.  (ECF Nos. 63, 65, 66.)

17        The evidentiary hearing was conducted on November 8, 2024, in which the evidence and
18  witness testimony was heard and admitted.  (ECF No. 75.)  At the conclusion of the hearing, the
19  Court ordered the parties to file a simultaneous supplement briefing by December 13, 2024, and
20  any reply was due on or before January 10, 2025.  (Id.)

21        Defendants filed a supplement brief on December 13, 2024.  (ECF No. 79.)  Plaintiff has
22  not filed a supplement brief or reply to Defendants' brief and the time to do so has passed.

23  **II.**

24  **ALLEGATIONS OF COMPLAINT**

25        On January 24, 2019, Plaintiff was housed at North Kern State Prison (NKSP) in the
26  mental health crisis bed unit under the medical care of a "Keyhea Order" which is court ordered
27  administered medication.  Plaintiff began to experience an episode of his mental health disorder
28  and began to physically choke himself and attempt to kill himself.  Defendant N. Pascua refused

1  to contact mental health staff to inform them that Plaintiff was having a mental health episode.
2  Defendant M. Childress also failed to contact the mental health staff to inform them that Plaintiff
3  was having a mental health episode. Defendants took it upon themselves to force medicate
4  Plaintiff even though they are not licensed to dispense medications or trained to deal with inmates
5  who are experiencing a psychiatric episode.
6      Defendants' actions resulted in Plaintiff's condition getting out of control causing him to
7  strike one of the Defendants. Plaintiff was punished for his actions there were a result of him
8  suffering a psychotic episode and committing a battery on Defendants.

## III.

## LEGAL STANDARDS

11      Any party may move for summary judgment, and the Court shall grant summary judgment
12  if the movant shows that there is no genuine dispute as to any material fact and the movant is
13  entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,
14  747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each
15  party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)
16  citing to particular parts of materials in the record, including but not limited to depositions,
17  documents, declarations, or discovery; or (2) showing that the materials cited do not establish the
18  presence or absence of a genuine dispute or that the opposing party cannot produce admissible
19  evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may
20  consider other materials in the record not cited to by the parties, although it is not required to do
21  so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031
22  (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).
23      The defendants bear the burden of proof in moving for summary judgment for failure to
24  exhaust, Albino v. Baca, 747 F.3d at 1166, and they must "prove that there was an available
25  administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.
26  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come
27  forward with evidence showing that there is something in his particular case that made the
28  existing and generally available administrative remedies effectively unavailable to him." Id. "If

1   the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to
2   exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166.  However,
3   "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather
4   than a jury should determine the facts."  Id.

5   The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such
6   administrative remedies as are available" before commencing a suit challenging prison
7   conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An
8   inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").
9   Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies
10  persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there
11  are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v.
12  Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532
13  U.S. 731, 739 (2001)).

14  This statutory exhaustion requirement applies to all inmate suits about prison life, Porter
15  v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by
16  the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and
17  unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing
18  Porter, 534 U.S. at 524).

19  The failure to exhaust is an affirmative defense, and the defendants bear the burden of
20  raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d
21  at 1166.  "In the rare event that a failure to exhaust is clear from the face of the complaint, a
22  defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise,
23  the defendants must produce evidence proving the failure to exhaust, and they are entitled to
24  summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most
25  favorable to the plaintiff, shows he failed to exhaust.  Id.

26  The regulations governing the filing and resolution of inmate grievances provide that "[a
27  claimant has the ability to submit a written grievance… to dispute a policy, decision, action,
28  condition or omission by the department or departmental staff." Cal. Code Regs. tit. 15, §

4

1  3481(a). To exhaust their administrative remedies, the regulations generally require inmates to
2  first submit a grievance to the institution's Office of Grievances within thirty days and then
3  appeal the institution's response to the Office of Appeals within thirty days. Id. at §§ 3482, 3485.
4  A substantive decision by the Office of Appeals then exhausts the inmate's administrative
5  remedies. Id. at §§ 3483(m), 3485.

6  A grievance does not exhaust administrative remedies until it is pursued through the final
7  level of review, id. § 3486(m), unless the issue under appeal was fully resolved at a lower level of
8  review, id. § 3483(m)(2). Institutional-level responses of "disapproved" and "rejected" are not
9  considered fully resolved and must be appealed in order for administrative remedies to be deemed
10 exhausted. Id. at §§ 3483(i)(1), (6); 3483(m).

**IV.**

**DISCUSSION**

13 This action is proceeding against Defendants N. Pascua and M. Childress for deliberate
14 indifference to a serious medical need in violation of the Eighth Amendment. Because there was
15 conflicting declaratory evidence regarding whether Plaintiff submitted a grievance which was not
16 properly processed, the issue could not be resolved by way of motion for summary judgment.

17 An evidentiary hearing was conducted on November 8, 2024. Plaintiff was present pro se
18 and Defendants were represented by Patricia Kealy and Joanna Hood. The Court heard testimony
19 from Plaintiff, Oscar Magallanes, Craig Riley, Kathy Salazar, Francisca Aligwekwe, Rahul
20 Swami, Arceli Navarrete, Maria Gonzalez, and Kimberly Cheek. The following exhibits were
21 admitted into evidence: Defendants' Exhibits A, B, C, D, O, P, and R. (ECF No. 75.)

22 In opposition to Defendants' motion for summary judgment and at the evidentiary
23 hearing, Plaintiff alleged that on January 25, 2019, an unnamed registered nurse authored and
24 submitted a grievance on his behalf and that said grievance was then disposed of by unnamed
25 CDCR staff. (ECF No. 52 at 4-5; Hearing Tr. 6:6-8:8.)

26 At the evidentiary hearing, Plaintiff did not present any evidence, besides his own
27 testimony, in support of his contention that: (1) a registered nurse authored and submitted a
28 grievance on his behalf; and (2) the grievance was disposed of by CDCR staff. (Id.)

### A. No Registered Nurse Working Second Watch on January 25, 2019, in the MHCB Unit Wrote a Grievance or Matches the Physical Description Provided by Plaintiff

Defendants presented evidence that the registered nurses Swami, Aligwekwe, Navarrete, Walker, and Covarrubias were working at NKSP during second watch on January 25, 2019. (Ex. P; Hearing Tr. 61:19-67:24.) Only nurses Swami, Aligwekwe, and Navarrete were assigned to areas where they could have provided care to a patient in an Mental Health Crisis Bed (MHCB), where Plaintiff was located. (Ex. P; Hearing Tr. 62:1-7, 75:5-10.) More specifically, Swami and Aligwekwe were assigned to the Correctional Treatment Center (CTC), and Navarrete was assigned directly to the MHCB unit. (Ex. P; Hearing Tr. 63:23-25, 87:1-3.) However, neither Swami nor Aligwekwe recall providing care to Plaintiff during the second watch on January 25, 2019. (Hearing Tr. 75:11-13, 82:22-25.) Although Navarrete provided Plaintiff care during second watch on January 25, 2019, all three of the nurses denied authoring a grievance on behalf of Plaintiff on January 25, 2019, or any other date. (Hearing Tr. 89:24-90:3, 75:17-25, 83:1-7, 90:13-91:1.) Indeed, Swami, Aligwekwe, and Navarrete all deny ever authoring a grievance on behalf of a patient or being asked to do so. (Hearing Tr. 76:1-6, 83:6-7, 91:2-6.)

Although Plaintiff described the nurse who assisted him as being a female with blonde hair, blue eyes, and approximately 5'5" in height, Swami, Aligwekwe, and Navarrete each deny matching the physical description provided by Plaintiff. (Hearing Tr. 78:3-15, 84:18-85:1, 92:18-93:1.) In addition, supervising registered nurse Salazar, who supervised the registered nurses working second watch on January 25, 2019, affirmed that nurses Swami, Aligwekwe, and Navarrete did not match Plaintiff's description. (Hearing Tr. 61:15-17, 62:12-20, 63:2-21, 64:12-16.) Nurses Walker and Covarrubias were assigned to the Treatment Triage Unit (TTA) and would not have provided care to or interacted with an MHCB patient. (Ex. P; Hearing Tr. 64:25-65:3, 65:20-25.) Salazar also affirmed nurses Walker and Covarrubias would not have cared for an MHCB patient, and do not match Plaintiff's description. (Hearing Tr. 64:18-20, 65:4-18, 66:2-6.) Likewise, psychiatric technician Kamrath and licensed vocational nurse Becerra, who worked second watch on January 25, 2019, do not match Plaintiff's description. (Hearing Tr. 66:7-67:16;

6

see also Ex. P.)

Although supervising nurses Salazar and Riley provided some direct care to patients, their duties primarily consisted of supporting and monitoring medical staff (registered nurses, licensed vocational nurses, and certified nursing assistants) assigned to their respective areas and ensuring compliance with all applicable protocols. (Hearing Tr. 37:7-15, 57:7-15, 68:2-8.) Nonetheless, Salazar and Riley did not provide medical care to Plaintiff during second watch on January 25, 2019, and deny ever authoring a grievance on Plaintiff's behalf or being asked to do so. (Hearing Tr. 45:7-21, 68:9-23.) In addition, neither Salazar nor Riley match Plaintiff's physical description of the nurse. (Hearing Tr. 52:21-54:15 71:18-72:1.)

### B. No Medical Staff Member That Cared for Plaintiff During Second Watch on January 25, 2019, Wrote Grievance on Behalf of Plaintiff or Matches Physical Description

Defendants presented evidence that the only medical staff who provided care to Plaintiff during second watch on January 25, 20291, consisted of nurse Navarrete, certified nursing assistance Gonzalez, and psychiatric technician Kamrath. (Hearing Tr. 45:4-21, 89:24-90:12, 100:6-18; see also Ex. R.) Because Plaintiff was on suicide watch he was under constant observation during the entirety of the second watch shift. (Hearing Tr. 39:19-22, 42:16-23; see also Ex. R.)

Patients in an MHCB are on suicide watch ("one-to-one") by order of a medical professional after determining that the patient is at risk of harming themselves or others. (Hearing Tr. 43:19-23.) During suicide watch, a medical staff member, typically a certified nursing assistance, is assigned to sit in front of the patients door, where they conduct constant observation through a window for the entirety of their eight-hour shift. (Hearing Tr. 58:12-13, 58:22-59:6, 95:24-96:6.) To this end, every fifteen minutes, the staff member is required to document in the patient's medical chart exactly what is going on with the patient and what they are doing (e.g., walking, laying down).[1] (Hearing Tr. 42:16-19, 94:23-95:1.)

///

---

[1] Exhibit R is a copy of the data from the Interactive View and I&O section of Plaintiff's medical chart on January 25, 2019. (Hearing Tr. 42:11-14; Ex. R.)

        During the second watch on January 25, 2019, certified nursing assistant Gonzalez conducted the suicide watch of Plaintiff. (Hearing Tr. 45:12-15, 100:6-18; see also Ex. R.) Gonzalez denies authoring a grievance on Plaintiff's behalf on January 25, 2019, or any other date and denies being asked by Plaintiff to do so. (Hearing Tr. 101:3-11.) Gonzalez testified that she would have recorded anything out of the ordinary, including q request from a patient for assistance in writing a grievance. (Hearing Tr. 96:24-25, 101:12-102:1.) Gonzalez denies authoring a grievance on Plaintiff's behalf on January 25, 2019, or any other date or being asked to do so. (Hearing Tr. 101:3-11.) Indeed, there is no documentation in Plaintiff's chart indicating that a request for assistance to file a grievance was made during second watch on January 25, 2019. (Hearing Tr. 52:7-19; see also Ex. R.) Gonzalez also confirmed that she would not have written a grievance for a patient as it was outside the scope of her practice and would distract from her primary duty on suicide watch-constant observation of the inmate patient for his safety. (Hearing Tr. 95:5-14, 102:2-8.)

        Nurse Navarrete provided care to Plaintiff during second watch on January 25, 2019, and was assigned to conduct license rounding every two hours ("Q2 rounding"). (Hearing Tr. 39:23-24, 89:17-23.) During the Q2 rounds, Navarrete takes the patient's vital signs and checks on the patient every two hours to verify that patient is safe and does not need assistance. (Hearing Tr. 39:23-40:3, 87:4-14.) Navarrete documents her observations in the patient's medical chart for the preceding two hour period. (Hearing Tr. 87:12-88:2.) If a patient is in need of assistance, he would communicate such request to Navarrete during the observation period, including a request for assistance in writing a grievance. (Hearing Tr. 47:24-48:7, 88:13-17, 88:23-89:6, 92:12-17.) If assistance is requested and provided to the patient, it would be documented in the patient's medical chart. (Hearing Tr. 47:24-48:7, 87:21-88:2.) Navarrete denies authoring a grievance on Plaintiff's behalf on January 25, 2019, or any other date and denies being asked by Plaintiff for assistance authoring a grievance on January 25, 2019, or on any other date. (Hearing Tr. 90:13-22.) Navarrete further denies that can Gonzalez relayed to her that Plaintiff requested assistance writing a grievance. (Id. at 90:23-91:1.) This denial is further affirmed by the absence of any entry by RN Navarrete in Plaintiff's chart stating that Plaintiff requested and received such

8

1    assistance during the second watch on January 25, 2019. (See Ex. R.)

2          Gonzalez testified that she did not match Plaintiff's physical description of the nurse

3    who allegedly assisted him on January 25, 2019. (Hearing Tr. 103:15-24.) Riley also confirmed

4    that Gonzalez did not match Plaintiff's physical description. (Hearing Tr. 45:24-46:7.) As

5    previously mentioned, Navarrete likewise denies matching Plaintiff's description, which Riley

6    and Salazar confirm. (Hearing Tr. 46:8-14, 63:19-64:17, 92:18-93:2.)  Kamrath, who

7    administered medication to Plaintiff during second watch on January 25, 2019, is a 6' tall male

8    with dark hair, and does not match Plaintiff's description.  (Hearing Tr. 45:16-21, 46:15-19, 66:7-

9    24; Ex. R at 5, 36.)

10         **C.**    **Medical Staff Would Have Documented Assisting Plaintiff With a Grievance**

11         Defendants presented evidence that if medical staff assisted an inmate patient with the

12   writing of a grievance it would have been documented in his medical chart.  (Hearing Tr. 50:18-

13   52:6, 70:8-15.)  All of the nurses who were assigned to areas which provide care to a patient in an

14   MHCB bed and working second watch shift at NKSP on January 25, 2019, confirmed if they

15   provided assistance to Plaintiff it would be documented in his chart. (Hearing Tr. 70:3-7, 77:19-

16   78:1, 84:8-12, 88:23-89:6, 92:12-17.)

17         Indeed, as noted above, Navarrete and Gonzalez, the two female medical staff who

18   provided substantive care to Plaintiff during second watch on January 25, 2019, would have

19   documented in his medical chart if Plaintiff asked for assistance in writing a grievance and if they

20   provided such assistance. (Hearing Tr. 47:24-48:7 52:7-19, 88:23-89:6, 92:12-17,

21   96:24-25, 101:12-102:1.)  Plaintiff's medical chart entries from second watch on January 25,

22   2019, confirm that no such assistance was provided by Navarrete, Gonzalez, or another

23   staff member. (See Ex. R.)

24         **D.**    **The Only Medical Staff Member Who Matches the Physical Description Was Not a Nurse, Not on Second Watch, and Did Not Write Plaintiff's Grievance**

25

26         Riley and Salazar identified psychiatric technician Cheek as the only medical staff

27   member which matched the physical description provided by Plaintiff whom he claimed authored

28   and submitted a grievance on hie behalf.  (ECF No. 57-4 at 2;  57-7 at 2.)  Cheek testified that as

of January 25, 2019, she was female, with blonde hair, green eyes, and was 5'2". (Hearing Tr. 108:3-11.) However, Cheek is not a nurse and worked third, not second, watch on January 25, 2019. (Hearing Tr. 105:10-13; ECF No. 57-6 at 3-4.) In addition, Cheek denies being asked to author a grievance on behalf of Plaintiff on January 25, 2019, or any other date, and denies being asked for assistance in doing so. (Hearing Tr. 106:15-23.)

### E. Grievance Log No. 279029 Was Late and Did Not Address His Underlying Claims in This Suit

Plaintiff acknowledges that the administrative grievance process was known and available to him. (ECF No. 29.) Indeed, Plaintiff used the administrative grievance process and submitted ten grievances and one appeal during the relevant time frame. (Ex. B; ECF No. 48-4 at 3.) Thus, Plaintiff was familiar of the process and how to use it. See, e.g., Wilson z. Zubiate, 718 Fed. Appx. 479, 481 (9th Cir. 2017) (administrative scheme not "essential unknowable" when ordinary prisoner knew to appeal grievance decision). Furthermore, Plaintiff admitted the availability of the grievance process at the evidentiary hearing. (Hearing Tr. 10:4-12:12.)

Plaintiff contends that he submitted a second grievance regarding his claims against Defendants authored by a fellow inmate after he was "out of the hole" which was admittedly late. (Hearing Tr. 12:25-13:15, 20:6-12.) Plaintiff signed, grievance log no. 279029, on June 23, 2022, which was received by the Office of Grievances at NKSP on July 12, 2022. (Hearing Tr. 18:23-25, 23:3-5; Ex. O at 8; Ex. C.) This grievance was signed by Plaintiff on the same day as he signed the operative complaint in this case, and it was received by the Office of Grievances less than two weeks before the operative complaint was filed in this Court. (Hearing Tr. 10:4-6, 23:3-5; Ex. O at 2; ECF No. 29 at 7; Ex. C.) Further, the grievance was rejected at the first level which was issued just three days prior to the operative complaint being filed. (Ex. O at 8; ECF No. 29.) Nonetheless, Plaintiff admitted that he never appealed the grievance decision and claimed he "wasn't sure what to do next." (Hearing Tr. 24:11-16.)

Even if Plaintiff exhausted this grievance through the highest level of review, it does not grieve the allegations at issue in this case. Rather, grievance log no. 279029, requests

10

reconsideration of the Rules Violation Report and criminal charges resulting from his actions on January 24, 2019. (Ex. O at 1-5.) Plaintiff acknowledged this grievance involved the Rules Violation Report and associated psychological factors. (Hearing Tr. 20:13-22:7.) Plaintiff claimed the grievance mentions Defendants Pascua and Munoz-Childress by name. (Hearing Tr. 22:1-22.) However, Defendants are not mentioned in the body of the grievance and are only mentioned in an exhibit attached to the grievance. (Ex. O at 1-5; Hearing Tr. 22:16-22.) The attached document is simply a report of the findings on the disciplinary hearing against Plaintiff related to the January 24, 2019 incident. (Ex O at 1-5.) This document does not serve to put the prison on notice of Plaintiff's claim that these Defendants did not inform medical staff of Plaintiff's mental health and improperly force medicated him. See Cal. Code Regs., tit. 15, § 3482(c)(2) (grievance shall include "names and titles of all involved department staff (or a description of those staff)…"). Accordingly, because this grievances does not mention either Defendant by name or description in the body of the grievance, nor does it include allegations that on January 24, 2019, medical staff were not informed of his mental health status or that Plaintiff was force medicated, it cannot serve to exhaust the administrative remedies for the claims at issue in this action.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that Plaintiff did not exhaust the administrative remedies with respect to the claim at issue in this action, i.e. that Defendants Pascua and Munoz-Childress did not inform medical staff of Plaintiff's mental health status and improperly force medicated him. Defendants have met their burden in demonstrating that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015). Plaintiff has failed to present credible evidence to demonstrate that he filed a grievance and was prevented from exhausting his administrative remedies. Accordingly, the Court finds that Plaintiff did not exhaust his administrative remedies prior to initiating this action, and HEREBY RECOMMENDS that the action should be dismissed, without prejudice.

11

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 14, 2025**

STANLEY A. BOONE
United States Magistrate Judge